UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Jeffrey Mundy,<br><br>        Appellant<br>v.<br><br>Bethany Eleese Eden,<br>formerly known as<br>Bethany Lee Witz,<br>also known as<br>Witlee Ethan,<br><br>        Appellee | Case Number<br>22-cv-00073-MGL<br><br>**Reply Brief** |

**A. The bankruptcy court <u>in</u>correctly found that the Motion to Lift Stay failed to provide notice that Mundy challenged the discharge of his claims.**

**1. The Appellant timely questioned the dischargeability of his claims.**

The Appellee, Bethany Eleese Eden, formerly known as Bethany Lee Witz, also known as Witlee Ethan (the "Appellee", "Debtor", or "Eden"), would have the Court place form over substance to deny Jeffrey Mundy (the "Appellant") the opportunity to pursue his tort claims against the Debtor. Contrary to the Debtor's arguments, the original Stay Motion, and the attached Complaint[1] are clear as to the relief requested. The Appellant asked for a judgment against the Debtor for defamation and malicious interference with a

---

[1] No. 2-2 @ pgs. 61-104.

1

contract, specifically requested relief from the automatic stay to obtain a judgment against the Debtor, questioned whether the Debtor's actions "may impact dischargeability", and further queried "whether Debtor secured Movant's (Appellant's) termination by fraud and/or material misrepresentations may impact dischargeability."[2]

In her brief, the Debtor states, in Footnote 11, that she did not argue the sufficiency of the Appellant's original Stay Motion to initiate an adversary proceeding until her response to the Appellant's Motion to Amend his previously filed motion[3]. To the contrary, the Debtor objected to the originally filed Stay Motion on November 15, 2021.[4] The Appellant did not move to amend that Stay Motion until November 18, 2021.[5]

In her objection to the original Stay Motion, the Debtor acknowledged the Appellant "is seeking damages for defamation, malicious interference with contract".[6] She noted the lack of a formal adversary pleading challenging the discharge of these claims:

> "There has been no action initiated in this case to deny the Debtor's discharge pursuant to 11 U.S.C. § 727, and the time for such an objection to discharge expired on November 1, 2021. Unless the disputed debt to Movant has been excepted from discharge, there is no reason for this claim

---

[2] Id. @ pg. 67.
[3] Id. @ pgs. 118-123.
[4] Id. @ pgs. 107-117.
[5] Id. @ pgs. 118-123.
[6] Id. @ pg. 107.

to be liquidated."[7]

In that objection, she further elaborated on the lack of a formal adversary filing by the Appellant as follows:

> "The Movant has not initiated any action to except his disputed debt from the Debtor's discharge. In the Movant's 10-page single-spaced motion, there is only one sentence that even mentions any issue involving the Debtor's discharge in this case. (See Motion at p. 7.) There, the Movant opines that in the *Salinas* case (*In re Salinas*, 2006 Bankr. LEXIS 4523, *12) "the Court was unable to discern whether the claims would have any impact on dischargeability." (Motion at p. 7. Movant then posits that, as to the NCUTPA (North Carolina Unfair Trade Practice Act) claim, "<u>whether Debtor secured Movant's termination by fraud and/or material misrepresentations may impact dischargeability</u>." (Motion at p. 7.) However, the Movant disregards the fact that in the *Salinas* case, the United States Trustee had objected to the debtor's discharge before relief from stay was requested. See *Salinas* at p. 4. Likewise, in the *Keane* case cited by Movant, there was a pending dischargeability complaint. See *In re Keane*, 2003 WL 22794551 (Bankr. E.D.Va. 2003). Unlike these cases relied upon by Movant, the Debtor's discharge has not been questioned or challenged in the case at bar."[8] (<u>emphasis added</u>).

Although the Debtor mischaracterizes the Appellant's query, "whether Debtor secured Movant's termination by fraud and/or material misrepresentations may impact dischargeability", to be related only to his NCUTPA ( N.C. Gen. Stat § 75-1.1) claim, she knew full well what relief was being pursued. In her brief, the Debtor claims that this phrase "was simply parroted from a case that was

---

[7] Id. @ pg. 108.
[8] Id.

being cited for the proposition that the Debtor would not be prejudiced by relief from stay."⁹ Instead, the Appellant referenced <u>his</u> specific claims against the Debtor as he questioned how <u>these</u> claims "may impact dischargeability".

**2. The Appellant provided sufficient notice of his challenge as to the dischargeability of his claims in both the body of the Stay Motion and the state court Complaint incorporated therein.**

The Debtor argues she "should not be required to parse through allegations in every pleading filed before the discharge deadline to determine if there are any allegations that might later be interpreted to fall under one of the categories of §523(a)(2), (4), or (6)."¹⁰ As stated above, the Debtor acknowledged in her response to the original Stay Motion that the Appellant "is seeking damages for defamation, malicious interference with contract".¹¹ The Appellant set forth his claims for slander per se and malicious interference with contractual relations in not only the attached Complaint, but the body of his Stay Motion¹².

The Debtor further disputes that the Stay Motion alleged any action by her to cause a "deliberate or intentional injury" to the Appellant such as to except those claims from discharge under § 523(a)(6).¹³ To the contrary, the Stay Motion described the Debtor's motivation to do the Appellant harm:

---

⁹ Appellee's Brief @ pg. 9.
¹⁰ Id. @ pg. 11.
¹¹ No. 2-2 @ pg. 107.
¹² Id. @ pg. 64.
¹³ Appellee's Brief @ pg. 11.

> "Defendant was unequivocal about her allegations, and informed NASB that she would 'go public' with her allegations about Plaintiff, unless NASB agreed to terminate Plaintiff, pay Defendant a large lump sum of money, and initiate criminal charges against Plaintiff."[14]

Indeed, the Appellant, in his very statement whereby he addressed the dischargeability of his claims, questioned "whether <u>Debtor secured Movant's termination</u> by fraud and/or material misrepresentations may impact dischargeability".[15](<u>emphasis added</u>). Here, the Appellant clearly alleged the Debtor willfully, maliciously, and deliberately acted to cause the Appellant the exact harm of which he complained in both the Stay Motion and the attached Complaint.

**B. The bankruptcy court <u>incorrectly</u> distinguished the facts in the case at bar from the *Wilkerson* case to deny Mundy's Motion to Amend, and <u>improperly</u> denied the request that the amendments relate back to the Motion to Lift Stay.**

The bankruptcy court attempted to distinguish the facts contained in *Wilkerson Fuel, Inc. v. Elliott*, 415 B.R. 214, 220 (D. S.C. 2009) from the case at bar. "The pleading in *Wilkerson* repeatedly asserted the debt was excepted from discharge under § 523 and provided the basis thereof, allowing it to meet the requirements of Fed. R. Civ. P. 8(a)(3) as 'a demand for the relief sought . . .'[.] That demand is lacking here and only a request for different relief was

---

[14] No. 2-2 @ pg. 63.
[15] Id. @ pg. 67.

communicated."[16] But, the movant in *Wilkerson* did not specifically pray for a judgment of nondischargeability. The Appellant can only be distinguished from the movant in *Wilkerson* for not referencing the relevant statutory section for nondischargeability. Like *Wilkerson*, the Appellant's Stay Motion and accompanying documents, taken together, were sufficient to place the Debtor on notice that the Appellant challenged the dischargeability of his claims.

The District Court in *Wilkerson* contrasted the facts and holdings contained in *Pfeiffer v. Rand (In re Rand)*, 144 B.R. 253 (Bankr. S.D.N.Y. 1992) with those of *In re Marino*, 37 F.3d 1354 (9th Cir.1994), two cases which applied distinctly different analyses in applying the notice pleading requirements of Fed. R. Bankr. P. 7008.

In *Marino*, prior to the deadline for filing a dischargeability complaint, the creditor filed an "Opposition to Sale, a declaration by an attorney at the firm, and copies of its state court complaint and other documents related to the [state court] action." 37 F.3d. at 1356. The creditor's attorney intended to file a complaint but erroneously believed that the bar date for filing a complaint was the same as for proof of claims. *Id.* The creditor filed a dischargeability complaint one day after the bar date. *Id.* The creditor argued that "its complaint should be considered timely based on the doctrines of substantial compliance and relation back of

---

[16] No. 2-3 @ pg. 28.

amended pleadings." *Id.*

    The Ninth Circuit stated

> "the policy of construing pleadings liberally does not justify the conclusion that any document filed in a court giving some notice of a claim satisfies the requirements of the Federal Rules. The documents filed on July 3, 1991, taken as a whole, do not satisfy the requirements for a complaint." *Id.* at 1357. The Ninth Circuit noted that "[t]he purpose of notice pleading is to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

*Marino*, 37 F.3d. at 1357 (internal quotation marks omitted). The Ninth Circuit detailed the formal deficiencies within the *Marino* pleading as follows:

> "(Former) Rule 8(a) requires a pleading that states a claim for relief to include a demand for judgment for the relief the pleader seeks. Classic Auto points to no language in the Opposition or documents filed with it that demands a judgment of nondischargeability as required by (Former) Rule 8(a). Moreover, the Opposition is not captioned as a pleading and does not include the correct file number as required by (Former) Rules 7(a) and 10(a). Nor do the documents satisfy the additional requirement of Bankruptcy Rule 7008(a) that in an adversary proceeding before a bankruptcy judge, a complaint shall contain a statement that the proceeding is core or non-core."

*Id.*

    In *Rand*, the deadline before which to file any objections to discharge or to the dischargeability of debts was set for February 10, 1992. On January 3, 1992, Pfeiffer, a creditor, submitted a letter to the court objecting to the discharge of her claim on the grounds asserted in the New Jersey state court action which she had

7

commenced to recover the amount of her loan. Attached to her letter were copies of the pertinent documentation in support of her motion. Thereafter, on February 21, 1992, Pfeiffer made her objection more formal by commencing a *pro se* adversary proceeding. The court held that the letter constituted a complaint finding that:

> "Pfeiffer's January 3rd letter and its accompanying documents sufficiently laid out Pfeiffer's objection to the dischargeability of her debt to be deemed a complaint. The letter and documents apprised the court of the general nature and extent of her potential claim. The letter also contained a reference to the name, number and chapter of the case to which this adversary proceeding relates."

144 B.R. at 256. The court does not indicate whether the creditor specifically mentioned 11 U.S.C. § 523 in the letter and does not appear to consider inclusion of such reference a prerequisite to constitute sufficient notice of her challenge to the discharge of her claims.

Finding Pfeiffer's January 3rd letter constituted a complaint, the court further determined that the filing of the letter with the court commenced an action in compliance with Fed. R. Civ. P. 3, made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7003, and hence an adversary proceeding per the Advisory Committee Note to Fed. R. Bankr. P. 7003. Because Pfeiffer's January 3rd letter constituted a complaint and was submitted prior to the February 10, 1992 deadline, her objection to the discharge of her claim was deemed timely. *Id.*

Just as it has in the present case[17], the bankruptcy court found the facts in *Wilkerson* were more similar to those in the *Marino* decision, which held that the pleading was insufficient to constitute an adversary complaint. The bankruptcy court's opinion was overturned by the District Court in *Wilkerson* which sided with the *Rand* analysis to find the creditor's motion to lift stay was a timely filed objection to discharge. Like the creditor in *Rand*, the Appellant's Stay Motion and accompanying documents in this case, albeit lacking specific reference to 11 U.S.C. § 523, were nevertheless sufficient to place the Debtor on notice that the Appellant challenged the dischargeability of his claims.

**C. The bankruptcy court <u>incorrectly</u> determined that equitable tolling was not warranted under the facts of this case.**

The bankruptcy court cited numerous cases from this Circuit holding that equitable tolling is an extraordinary remedy to be used sparingly.[18] *Wilkerson* is chief among the cases relied upon in this analysis which holds, "[e]quitable tolling is 'appropriate where the claimant has actively pursued his judicial remedies by filing a <u>defective pleading</u> during the statutory period...'". (<u>emphasis added</u>). *Wilkerson*, 415 B.R. at 222 (citing *Asbury v. City of Roanoke*, 599 F.Supp.2d 712, at 719 (W.D.Va. 2009). (unpublished).

However, in the conclusion of its order, the bankruptcy court attempts to

---

[17] Id.
[18] No. 2-3 @ pgs. 29-33.

9

distinguish the Stay Motion in the case at bar from the motion to lift stay filed in *Wilkerson* by finding that the Appellant "did <u>not</u> file a pleading during the requisite period <u>that gave notice of any nondischargeability claims</u>."[19](<u>emphasis added</u>). The bankruptcy court ignores the Appellant's Stay Motion because it perceives the motion to lack the notice pleading requirements of Fed. R. Bankr. P. 7008. Here, the bankruptcy court disregards the Stay Motion, which may be <u>defective</u> in some respects, but was timely filed evidencing the Appellant's active pursuit of his judicial remedies prior to the discharge deadline. Had the Stay Motion met all the notice pleading requirements of Fed. R. Bankr. P. 7008, the pleading would not have been defective, and no equitable tolling would be necessary. As stated in *Wilkerson*, "even if the court were to find that the Motion was insufficient to allege a complaint, the court finds that in equity, the deadline set forth in Rule 4007(c), should be tolled to allow the filing of a complaint." 415 B.R. at 220.

**D. The bankruptcy court erred in its consideration of the prejudice of the parties.**

"In deeming equitable tolling to be appropriate in such circumstances, the Supreme Court has reasoned that tolling is justified because the defendant received timely notice of the plaintiff's claims, there was no resulting prejudice, and the plaintiff acted with diligence." *Aikens v. Ingram*, 524 F. App'x. 873, 880

---

[19] Id. @ pg. 33.

(4th Cir. 2013) (citations omitted).

In the present case, the bankruptcy court compared the prejudices that the court perceived would result to the respective parties from either granting or denying the equitable tolling doctrine. According to the bankruptcy court, "Creditor will be prejudiced if the deadline is not tolled because his claims will be disposed of by the discharge."[20] But as to the Appellee, the bankruptcy court states, "[a]lthough Debtor has not yet received a discharge, it is due and if she prevails in this matter Creditor's claimed debt will be included."[21] The bankruptcy court concluded:

> "However, this is the precise scenario contemplated by the Bankruptcy Code and Rules in providing the deadline to initiate such action because the intent is to resolve the matter of dischargeability promptly and definitively in order to ensure that the debtor receives a fresh start unobstructed by lingering doubts about the finality of the bankruptcy decree. It is a high hurdle for a party asserting the deadline should be equitably tolled and the mere fact that Creditor's debt will otherwise be discharged is insufficient to tip the scales in Creditor's favor." (quotation marks and citation omitted).[22]

The District Court in *Wilkerson* noted the bankruptcy court also appeared to make equitable considerations in a previous ruling regarding whether Wilkerson filed a timely complaint and remanded the case to allow the bankruptcy court to articulate the prejudice to the parties. "On remand, the

---

[20] Id. @ pg. 32.
[21] Id.
[22] Id. @ pgs. 32-33.

bankruptcy court stated that 'it was never the intention of this court to base its decision whether to exercise any powers under § 105 by balancing hardships, and this court found no case law suggesting that scales tipped in favor of Wilkerson warrant the relief requested.'" *Wilkerson*, 415 B.R. at 221.

In the present case, the bankruptcy court acknowledged, "[t]he deadline in Rule 4007(c) is not jurisdictional and does not preclude the bankruptcy court from exercising its equitable powers in extraordinary cases."[23] Quoting *Calendario v. Pagan (In re Pagan)*, 282 B.R. 735, 738 (Bankr. D. Mass. 2002), the bankruptcy court refused to exercise its equitable powers to toll this deadline:

> "Generally, the time limitations set forth in the bankruptcy rules should be strictly enforced so that they may serve their dual purpose of ensuring swift administration of the bankruptcy estate, and allowing debtors a fresh start and a sense of finality and certainty in relief from financial distress as quickly as possible."[24]

But, *Pagan* tempered adherence to such limitations stating:

> "[T]he policy of finality and expediency must be balanced against principles of equity so that fraud will not prevail, ... substance will not give way to form [and] ... technical considerations will not prevent substantial justice from being done. Commensurate with this policy, federal courts are hesitant to issue orders depriving parties from obtaining a hearing on the merits of their claims. Whether the issue be one of setting aside a default, or one of improper pleading, federal courts will preclude a party from a hearing on the merits only in the strongest instances. This is especially true when the dispute concerns the enforcement of a procedural rule, [construing them] to

---

[23] Id. @ pg. 31 quoting *Wilkerson*, 415 B.R. at 221.
[24] Id. @ pg. 29.

secure the just ... determination of every case and proceeding." (quotation marks and citation omitted).

*Pagan* further cited a collection of cases addressing the potential prejudice to debtors from applying the notice, or "relation back" doctrine, to toll the bar date for properly filing complaints objecting to the discharge of claims.

> "Courts will excuse untimeliness only when doing so is consistent with the purpose of the rules ... in other words, where the delay was harmless." *Haseotes v. Cumberland Farms, Inc. (In re Cumberland Farms, Inc.)*, 284 F.3d 216, 226 (1st Cir.2002); *Tully Constr. Co., Inc. v. Cannonsburg Envtl. Assoc., Ltd. (In re Cannonsburg Envtl. Assoc., Ltd.)*, 72 F.3d 1260, 1264-65 (6th Cir.1996) (holding that an objection to discharge filed as a motion instead of through an adversary proceeding constituted harmless error) and cases cited therein. In such instances, the defendant suffers no prejudice when the plaintiff amends the original pleading to conform to procedural requirements after the bar date. See *United States v. Lewis (In re Lewis)*, 142 B.R. 952, 955 (D. Col. 1992) ("there must be demonstrable prejudice from the failure to proceed in an adversary proceeding."); *In re Service Merch. Co.*, 256 B.R. 755, 766 (Bankr. M.D. Tenn. 2000) (holding that although an adversary proceeding was the proper procedural venue to pursue the claim at issue, the defendants did not suffer prejudice)."

282 B.R. at 741.

In the case at bar, the bankruptcy court, in denying the Appellant's Motion to Amend, gave undue consideration to what prejudice the Debtor may suffer from lingering doubts about the finality of her discharge as opposed to the prejudice suffered by the Appellant by forever disposing of his claims if the discharge deadline is not tolled.

Consequently, the Appellant respectfully asks this Court to reverse the bankruptcy court; that the Stay Motion be deemed to satisfy the requirements of Fed. R. Bankr. P. 7004 and 7008; that the Motion to Amend be granted; the amended pleading relate back to the filing of the Stay Motion; and remand the case to the bankruptcy court for adjudication of the Appellant's objection to the discharge of his claims.

Respectfully submitted,

/s/Randy A. Skinner
Randy A. Skinner, Fed. Id. 5412
300 North Main Street, Suite 201
Greenville, South Carolina 29601
Telephone: (864) 232-2007
E-mail: rskinner@skinnerlawfirm.com
Attorney for the Appellant, Jeffrey Mundy

April 5, 2022

**Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements**

1. This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B) because this document contains 3,342 words.

2. This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Times New Roman in 14-point.

　　　　　　　　　　　　　　　　　　　　/s/Randy A. Skinner
　　　　　　　　　　　　　　　　　　　　Randy A. Skinner, Fed. Id. 5412
　　　　　　　　　　　　　　　　　　　　300 North Main Street, Suite 201
　　　　　　　　　　　　　　　　　　　　Greenville, South Carolina 29601
　　　　　　　　　　　　　　　　　　　　Telephone: (864) 232-2007
　　　　　　　　　　　　　　　　　　　　E-mail: rskinner@skinnerlawfirm.com
　　　　　　　　　　　　　　　　　　　　Attorney for the Appellant, Jeffrey Mundy

April 5, 2022